IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.   12-cv-01639-WYD-CBS

ORBITCOM, INC.,

    Petitioner,

v.

QWEST COMMUNICATIONS COMPANY, LLC d/b/a CENTURYLINK QCC,

    Respondent.

## ORDER

THIS MATTER comes before me on the Respondent's Motion to Confirm Arbitration Award (ECF No. 21) and Petitioner's Motion to Vacate Arbitration Award Pursuant to N.Y. C.P.L.R. § 7511 (ECF No. 20).  After carefully considering the parties' motions, responses and replies, I grant Respondent's motion to confirm arbitration award and deny Petitioner's motion to vacate arbitration award for the reasons stated below.

I.    BACKGROUND

By way of background, this case arises out of a billing dispute between Respondent Qwest Communications Company ("Qwest") and Petitioner Orbitcom ("OrbitCom").  At some point prior to September 2009, as part of a business relationship, OrbitCom purchased wholesale long distance services from Qwest that were then resold to its own end-user customers.  For a period of time, OrbitCom billed Qwest for switched access charges.  Qwest determined that OrbitCom's invoices

allegedly included improperly billed amounts and overages. Thus, Qwest ceased paying OrbitCom's invoices. In response, on December 23, 2008, OrbitCom commenced a state court lawsuit against Qwest to collect on its unpaid invoices. Qwest removed the action to this Court, and on June 25, 2009, Senior District Judge Walker L. Miller ordered the case be submitted to arbitration consistent with the terms of Qwest's Wholesale Services Agreement ("WSA"), which included an applicable arbitration clause.

On September 18, 2009, OrbitCom filed its Complaint in Arbitration with the Judicial Arbiter Group ("JAMS") in Denver, Colorado. In response, Qwest filed counterclaims. In March 2010, over the course of a six-day evidentiary hearing, an arbitrator heard the parties' respective claims. On August 20, 2010, the arbitrator issued his interim award, but withheld entry of the final award pending the parties' submission of briefs addressing limited matters including interest and attorney fees. By November 11, 2010, briefing on the remaining issues was completed. On January 31, 2012, OrbitCom filed an objection to the arbitrator issuing any subsequent rulings based on New York procedural law. On March 28, 2012, the arbitrator overruled this objection, concluding that New York law did not apply and that, in any event, OrbitCom had not suffered any prejudice from the delay in receiving a final award. Also, on March 28, 2012, the arbitrator issued his final award, which incorporated the findings of fact and conclusions of law issued on August 20, 2010, corrected a calculation and addressed interest and attorney fees.

Here, OrbitCom seeks to have the "arbitrator's award vacated because the

arbitrator exceeded his powers by delaying entry of a final award for over 16 months after the arbitration closed ... ." (Pet.'s Mot. at 3). In response, Qwest argues that the award should be confirmed because the FAA, not New York procedural law, governs any petition to enforce, modify, or vacate an award. "[N]either the JAMS Rules, nor the FAA, provide that a failure by an arbitrator to submit a timely final award is grounds for vacatur of the award." (Resp.'s Mot. at 11-12).

II.   LEGAL STANDARD

Analogous to this case, once a court independently determines the parties agreed to arbitrate an issue, it should give "extreme deference" to an arbitrator's decision regarding the scope of that issue. *Burlington Northern and Santa Fe Ry. Co. v. Pub. Ser. Co. of Okla.*, 636 F.3d 562, 568 (10th Cir. 2010) (citing *Sheldon v. Vermonty*, 269 F.3d 1202, 1206 (10th Cir. 2001)). Other circuits have expressly held "the arbitrator's interpretation of the scope of his powers is entitled to the same level of deference as his determination on the merits." *Id.* (citing *Schoenduve Corp. v. Lucent Techs., Inc.*, 442 F.3d 727, 733 (9th Cir. 2006); *Major League Umpires Ass'n v. Am. League of Prof. Baseball Clubs*, 357 F.3d 272, 279 (3d Cir. 2004)).

Furthermore, a federal court's power to review an arbitration award is quite limited; "maximum deference is owed to the arbitrator's decision." *ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir. 1995). In fact, "the standard of review of arbitral awards 'is among the narrowest known to the law.' " *Id.* (quoting *Litvak Packing Co. v. United Food & Commercial Workers, Local Union No. 7*, 886 F.2d 275,

276 (10th Cir.1989)).  According to the Tenth Circuit:

> Once an arbitration award is entered, the finality that courts should afford the arbitration process weighs heavily in favor of the award, and courts must exercise great caution when asked to set aside an award. Because a primary purpose behind arbitration agreements is to avoid the delay of court proceedings, it is well settled that judicial review of an arbitration award is very narrowly limited.

*Foster v. Turley*, 808 F.2d 38, 42 (10th Cir. 1986) (citations omitted).  Thus, a federal court will only set aside an arbitration award in "very unusual circumstances." *Kelley v. Michaels*, 59 F.3d 1050, 1053 (10th Cir. 1995) (quotations omitted).  The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, authorizes vacation of an award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  *Id.* § 10(a)(4).[1]

An arbitrator's erroneous interpretations or applications of the law are not reversible.  *ARW Exploration Corp.*, 45 F.3d 1455, 1463 (citing *Wilko v. Swan*, 346 U.S. 427, 436–37, 74 S.Ct. 182, 187 (1953)).  "Only a 'manifest disregard' of the law is subject to reversal." *Id.* (citations omitted).  The Tenth Circuit has characterized the

---

[1]The other enumerated grounds under the FAA which authorize a court to vacate an award are:

> (1) Where the award was procured by corruption, fraud, or undue means.
> (2) Where there was evident partiality or corruption in the arbitrators, or either of them.
> (3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

9 U.S.C.A. § 10(a)(1)-(3).

manifest disregard standard as "willful inattentiveness to the governing law." *Id.* (quoting *Jenkins v. Prudential–Bache Sec., Inc.*, 847 F.2d 631, 634 (10th Cir. 1988)). "Manifest disregard of the law clearly means more than error or misunderstanding with respect to the law." *Id.* (internal quotation marks and citations omitted). Similarly, "[a] court may not review whether an arbitration panel has misconstrued a contract." *Bernardt v. Polygraphic Co. of Am.*, 350 U.S. 198, 203 n. 4, 76 S.Ct. 273, 276 n. 4 (1956). Thus, "[w]hile the arbitration panel may not ignore the language of the contract, as long as the arbitrator is even arguably construing the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *United Paperworkers Int'l Union v. Misco., Inc.*, 484 U.S. 29, 38, 108 S.Ct. 364, 371 (1987); *see also Seymour v. BlueCross/Blue Shield*, 988 F.2d 1020, 1022–23 (10th Cir. 1993).

III.   ANALYSIS

Importantly, here, OrbitCom does not object to the arbitrability of disputes arising under the WSA. Instead, OrbitCom objects to the arbitrator's delay in issuing the final award. OrbitCom contends that New York law, not the FAA, should govern whether the arbitrator's delay in issuing the final award exceeded the scope of his powers. OrbitCom asserts that under New York law, "an arbitrator who fails to issue a final award within the time provided by the arbitration agreement, or incorporated by reference therein, exceeds his powers." (Pet.'s Mot. at 2) (citations omitted).

The FAA was designed to overrule the judiciary's long-standing refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other

contracts.  *Volt Info. Sciences v. Brd. of Trustees*, 489 U.S. 468, 478 (1989).  Accordingly, since an arbitration agreement is merely a contract, the FAA allows parties to exclude certain claims from the scope of their arbitration agreement or agree to follow state rules of arbitration.  *Id.* at 479.  However, absent a clear contractual intent to exclude certain claims or to follow a different substantive law, the FAA controls.  *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 59 (1995).

In *Mastrobuono*, an analogous case involving the inquiry of whether punitive damages were recoverable in arbitration, the Supreme Court held that "if contracting parties agree to include claims for punitive damages within the issues to be arbitrated, the FAA ensures that their agreement will be enforced according to its terms even if a rule of state law would otherwise exclude such claims from arbitration."  *Id.* at 63.  The *Mastrobuono* Court also noted that the dispositive issue was whether the parties' contract allowed arbitration of punitive damages.  *See id.* at 58.  To resolve this issue, the Supreme Court looked to the contractual arbitration agreement and choice of law provisions.  *See id.* at 59-64.

Turning to the case at hand, I must also determine, based on the language of the WSA and its choice of law provisions, whether the parties intended for the FAA or New York state law to govern the arbitration procedures.

The WSA provides in relevant part:

> 20.   <u>Governing Law</u>.  This Agreement will be governed by, enforced and construed in accordance with the laws of the State of New York excluding the choice of law provisions ...

> 21. <u>Arbitration of Disputes</u>.
>
> 21.1 Except with respect to disputes arising under Section 5 of this Agreement, or any breach of that section, *any dispute arising out of, or relating to, this Agreement shall be settled by arbitration to be conducted in accordance with the Judicial Arbitration and Mediation Services ("JAMS") Comprehensive Arbitration Rules. The Federal Arbitration Act, 9 U.S.C. Sections 1-16, not state law, shall govern the arbitrability of the dispute. New York law, without regard to choice of law principles, will otherwise govern and apply to any and all claims.*

Qwest Wholesale Services Agreement ("WSA") ¶¶ 20- 21.1 at 5 (emphasis added).

OrbitCom contends that these provisions of the WSA establish that New York law should govern the arbitration procedures, not JAMS or the FAA. I disagree with this interpretation of the WSA's language. In *Mastrobuono*, that Supreme Court instructed that

> the best way to harmonize the choice-of-law provision with the arbitration provision is to read 'the laws of the State of New York' to encompass substantive principles that New York courts would apply, but not to include special rules limiting the authority of arbitrators. Thus, the choice-of-law provision covers the rights and duties of the parties while the arbitration clause covers arbitration; neither sentence intrudes upon the other.

*Mastrobuono*, 514 U.S. at 63-64. Consistent with the Supreme Court's approach, here, I read paragraphs 20-21.1 of the WSA to mean that the FAA will govern the arbitration, including its procedures and the authority of arbitrators, while New York law will govern the substantive claims asserted by both OrbitCom and Qwest. Absent a specific provision that specifically states that New York law will govern arbitration procedures, I

must find that the FAA controls.  Accordingly, I find that the FAA governs whether the arbitrator exceeded his power in issuing the final award 16 months after the arbitration closed.

I note that the arbitrator issued the interim award in August 2010.  Notably, the final award differed from the interim award only to the extent that it corrected a mathematical error, included findings on the calculation of interest, and eliminated an attorney fee award previously made in Qwest's favor.  Thus, OrbitCom has been on notice of the substance of the arbitrator's ruling since August 2010.  The changes to the final award were not substantive and benefitted OrbitCom with respect to Qwest's attorney fee request.  I find that OrbitCom's challenge to the arbitrator's scope of authority based on the untimeliness of the final award is likely just an attempt to re-litigate its dispute in court after an unfavorable arbitration ruling.  *See Burlington*, 636 F.2d at 568 (holding that "[t]he finality of any arbitration award would be meaningless if a losing party could re-litigate its dispute in court by claiming an arbitrator exceeded his or her authority.").  Accordingly, after applying the legal standards set forth in section II of this Order and giving extreme deference to the arbitrator's decision, I cannot conclude that the arbitrator exceeded his power by delaying his final award by 16 months.  I find that OrbitCom has not carried its burden of establishing that the arbitrator exceeded his powers under 9 U.S.C. §§ 1-16.

IV.   CONCLUSION

Based on the foregoing, it is

ORDERED that Respondent's Motion to Confirm Arbitration Award (ECF No. 21)

is **GRANTED** and Petitioner's Motion to Vacate Arbitration Award Pursuant to N.Y. C.P.L.R. § 7511 (ECF No. 20) is **DENIED**.  This matter is hereby **DISMISSED.**

Dated:  March 12, 2013

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge